IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FELIX PEREZ, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 08-4885 (PGS) <br><br><br> OPINION AND ORDER |

This matter is before the Court on Plaintiff Felix Perez's appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") denying him disability insurance benefits. Plaintiff alleges disability beginning September 7, 1999 due to back pain and depression. His claim was denied initially on March 10, 2006. On January 4, 2008 a hearing was held before the Hon. Richard L. De Steno (ALJ). A spanish interpreter assisted Plaintiff at the hearing. On February 6, 2008 the ALJ issued his decision that Plaintiff was not disabled since November 28, 2005, the date the application was filed. (R. 16)[1].

I.

Plaintiff is a 50 year old man born on June 6, 1959. He is a native of the Dominican Republic, and moved to this country when he was 19 years old. He attended school through the fourth year in the Dominican Republic, which is equivalent to a 12th grade education in the United States. (R. 130). He has never been married, and is the father of two children. He has no history of

---

[1] Since Plaintiff reported work activity from June, 2005 through November, 2005, November 2005 was used as the onset date.

drug or alcohol abuse.  He can read and write in Spanish, but Plaintiff is not literate in English. . . Plaintiff knows how to use a checking and savings account, and is proficient in counting change.  (R. 71).  He lives with his son in an apartment, and he does not drive a car.

Plaintiff's daily activities include watching television and light cleaning. (R. 68).  Socially he spends time with his son, and attends appointments daily.  According to Mr. Perez, he is always irritated and furious because of his pain, and that he avoids social events due to the pain.  (R. 73). He is very "explosive", enrages very quickly, and reacts negatively to authority figures such as bosses because "they are abusive."  (R. 74)

Plaintiff alleges disability due to back pain that radiates down his legs, and depression. According to his daily function report, he first had back pain in September, 1999. (R. 131). According to Perez, the pain is caused by lifting, carrying, and sitting too long.  His pain is "excruciating," and he is unable to stand, sit or walk when he is in pain. (R. 131).

At his January 4, 2008 hearing, Plaintiff testified that he can only sit for 20-30 minutes, stand 20-25 minutes, and walk about ten minutes before he has pain.  He testified that he does not lift anything, and kneeling is the only position that is not painful.  As a result, he indicated that he doesn't do anything all day.  Plaintiff testified that upon awakening he takes pain medication and then bathes himself with a cloth while in bed (if he tries to bathe in the bathroom tub he often falls). He testified that his back pain began in the early nineties when he twisted his spine as he arose from bed.

Plaintiff is currently prescribed Flexeril, Naprosyn, Ultracet and heat therapy for his back pain. His medications sometimes cause side effects such as upset stomach, nausea and sleepiness. (R. 102).  Other than medications, he uses Icy Hot patches and massages his back with hot water.

In addition to back pain, Plaintiff testified that he also suffers from depression and anxiety, and feels hopeless, frustrated, and irritable with no desire to keep living. (R. 100, 133).

Plaintiff's prior work history includes employment as a dishwasher at Fleet Food in Newark New Jersey in 2003-2004. Fleet Food is a company that provides food service for the airline industry. His job required him to lift three to four plates out of the dishwasher and pack them in a box. He testified that this job ended because his leg would become numb causing him to fall, and he was fired after missing three days of work due to pain. (R. 246). His earnings report also indicates that he worked for KFC as recently as 2005. Plaintiff also states that he worked in a shop from 1990 through 1996 using machine tools and equipment. (R. 56, 92-97, 106).

Medical Reports

On October 27, 2005, Plaintiff was treated at Columbus Hospital as an out-patient for lower non-radiating back pain. Plaintiff rated his pain as a 10 (most intense). (R. 143). He was diagnosed with a herniated disc and sciatica and was treated with Flexeril, Naprosyn and heat therapy. (R. 146-153). At that time, he was ambulating and had a normal gait. He had a follow-up visit at Columbus Hospital a few days later (November 2, 2005) where he acknowledged that he had lost the prescription for his medications. The same diagnosis and medicine were given. (R. 154-160).

On January 19, 2006 Plaintiff was treated at the St. Michael's Medical Center Emergency Room as an out-patient for back pain that had persisted for five days with pain radiating down to his legs. Dr. Arthur G. Calise provided a diagnosis of disc degeneration and back pain. Plaintiff rated his pain as a 5 (mid-range). On examination his gait was steady, and he had full range of motion. The rest of the examination was unremarkable. He was prescribed Ultracet 325 mg and was referred for a follow up. He was ambulating when released. (R. 198-208).

On June 6, 2006 Plaintiff was treated at the Columbus Hospital Emergency Room as an out-patient for lower back pain which was rated by Plaintiff as a 10. An MRI of the lumbar spine taken at the Columbus Hospital Radiology Department revealed Grade II spondylolyis at L5, bilateral foraminal stenosis at L5/S1, and disc narrowing. (R. 209, 217). On discharge, he was prescribed Celebrex, Skelaxin, and Ultracet with instructions for follow-up treatment in two days. (R. 209-219).

Plaintiff was not treated again until August 23, 2006 at St. Michael's Hospital when back pain persisted for three days (the severity of pain rated by Plaintiff as a 3). On examination, his gait was steady and he had a full range of motion. (R. 222). He was prescribed Motrin and Flexeril and was ambulating on release. At the time, he was instructed that he may return to work in a week so long as there was no heavy lifting. (R. 222-224).

Consultative Examinations

On February 9, 2006 Plaintiff was seen by M.A. Mohil, M.D. for a consultative internal examination. (R. 162-164). At that time, Plaintiff complained of back pain which radiated into both legs. He stated that he could walk four to five blocks, can sit for 12 to 14 minutes and dressed without assistance. He denied any other medical history other than a left inguinal hernia repair. On examination, Plaintiff was noted to be in no acute distress. He ambulated slowly, but with minimal difficulty. He had no difficulty dressing, or maneuvering on or off the examining table. He did not use an assistive device, but was using a soft back brace. He appeared comfortable sitting during the interview. Examination of the cervical spine found normal flexion/extension, normal lateral flexion, and normal lateral rotation. There was some limitation of flexion/extension in the lower spine which was limited to 0 to 30 degrees. Plantar flexion to the left and right was limited to 0 to 20 degrees. There was no atrophy of Plaintiff's musculature. His knee and ankle reflexes were essentially

4

normal. Decreased sensation was noted in both lower extremities. Plaintiff had normal range of motion in his hips, but had pain in his back and knees when flexing the knees to 90 degrees. The impression was lumbrosacral strain, cervical strain and pain in the knees. An x-ray of the lumbosacral spine revealed a Grade II spondylolisthesis at L5/S1, with probable spondylosis, and degenerative disc disease at L5/S1. Dr. Mohit recommended a MRI of the lumbar spine. (R. 162-167).

On February 13, 2006, Plaintiff was seen by Marc Friedman, M.D. a board certified psychologist, for a consultative mental status examination. He walked with a limp and appeared to be in pain when seated and when rising. He stood and stretched several times during the interview, and appeared to be very uncomfortable. Dr. Friedman noted that Mr. Perez expressed himself in simple sentences, and his speech was clear and understandable. He had poor memory, and had difficulty remembering dates of past events. He was cooperative, his mood subdued and his affect severely constricted. (R. 168).

At the time of the mental status evaluation, Plaintiff described his condition as a pinched nerve which affected his walking, standing and sitting. He elaborated that he was always irritable and in a lot of pain. He complained that he did not sleep well. Plaintiff indicated that the last time he worked was in 1997 when he was self-employed as a painter. He stated that at one time he was receiving Medicaid and was taking prescription drugs for his pain, but that Medicaid ran out and he can no longer afford medications. His son cares form him, and has purchased his pain medications in the past, but has difficulty paying for them now. (R. 169). In terms of routine, Plaintiff told Dr. Friedman that he awakes at 7 or 8 a.m. His son cooks breakfast and helps him dress because he has pain when putting on his shoes and socks. After his son leaves for work, Mr. Perez sleeps

5

extensively during the day or watches television, and has no interest in social contact. Perez described himself as "very bored," and feels poorly because he is taking advantage of his son's hospitality, and he would rather be working. He retires to bed at 9:00 p.m., but often does not fall asleep until 1 or 2 a.m. He advised Dr. Friedman that one doctor recommended an operation, but the physician indicated there is no guarantee that the operation would be successful, and it could make his back condition worse. He stated that he was told that when he gets older he probably won't be able to walk, and this depresses him.

In terms of cognitive abilities, Mr. Perez recalled the name of the current president, but could not name the previous one. He could not multiply by sevens and he could not do other simple calculations, but he could abstract or think theoretically to a limited extent. His intelligence was below average. His concentration was good, but his memory was somewhat impaired. Dr. Friedman's conclusion was depressive disorder, not otherwise specified (listing 12.04/affective disorder). He was given a GAF of 45 and was given a fair prognosis for his depressive disorder. Dr. Friedman suggested that Mr. Perez attend supportive psychotherapy and have an evaluation for antidepressants.

On March 8, 2006, a Physical Residual Functional Capacity Assessment ("RFC") was completed by non-examining State Disability physicians. These physicians assessed Plaintiff with the ability to do light work, with the ability to occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for a total of about six hours in an 8 hour work day; sit about six hours in an eight hour work day; unlimited ability to push and/or pull (including operation of hand and/or foot controls). They assessed Plaintiff with occasional postural limitations in climbing ladders, ropes, and scaffolds, kneeling, crouching, stooping and

crawling, and frequent postural limitations in balancing and climbing ramps and stairs. (R. 190-192).

The Psychiatric Review Technique completed by non-examining State Disability Medical consultants assessed Plaintiff's mental functional limitations as "moderate" in activities of daily living such as maintaining social function, maintaining concentration, and maintaining persistence or pace. Plaintiff's Mental Residual Functional Capacity Assessment found that Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods of time, in performing activities within a schedule and maintain regular attendance, and in his ability to complete a normal work week. He was also moderately limited in his ability to travel in unfamiliar places or use public transportation, and in setting realistic goals. He was found to be "markedly" limited in his ability to understand and remember details, and his ability to carry out detailed instructions. (R. 186-188). He was able to relate and adapt in work-like settings. In addition, Plaintiff has no episodes of extended decompensation which is necessary to satisfy a listing for any mental impairment. (R. 182).

## II.

Review of the Commissioner's final decision is limited to determining whether the findings and decision are supported by substantial evidence in the record. See *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. §405(g). The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. S 405(g)*; Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft,* 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted)); see *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial

evidence is less than a preponderance of the evidence, but more than a mere scintilla. *Richardson*, 402 U.S. at 401; *Morales*, 225 F.3d at 316; *Plummer*, 186 F.3d at 422. Likewise, the ALJ's decision is not supported by substantial evidence where there is "competent evidence" to support the alternative and the ALJ does not "explicitly explain all the evidence" or "adequately explain his reasons for rejecting or discrediting competent evidence." *Sykes v. Apfel*, 228 F.3d 259, 266 n.9

The reviewing court must view the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).

> A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence - - particularly certain types of evidence (e.g., that offered by treating physicians) - - or if it really constitutes not evidence but mere conclusion.

*Morales*, 225 F.3d at 316 (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)); *Benton v. Bowen*, 820 F.2d 85, 88 (3d Cir. 1987). Nevertheless, the district court's review is deferential to the ALJ's factual determinations. *Williams v. Sec'y of Health and Human Servs.*, 970 F.2d 1178, 1182 (3d Cir. 1992) (en banc) (stating that the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder."). A reviewing court will not set a Commissioner's decision aside even if it "would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. But despite the deference due the Commissioner, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales*, 225 F.3d at 316 (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

Title II of the Social Security Act (42 U.S.C. §401, *et seq.* requires that the claimant provide objective medical evidence to substantiate and prove his or her claim of disability. *See,* 42 U.S.C. §(d)(5)(a).   Therefore, claimant must prove that his or her impairment is medically determinable and cannot be deemed disabled merely by subjective complaints such as pain.  A claimant's symptoms "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . .[one's] ability to do basic work activities unless "medical signs" or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. §404.1529(b). *Hartranft,* 181 F.3d at 362. In *Hartranft*, claimant's argument that the Administrative law judge failed to consider his subjective findings were rejected where the ALJ made findings that claimant's claims of pain and other subjective symptoms were not consistent with the objective medical records found in the record or the claimant's own hearing testimony.

### III.

Plaintiff seeks reversal on four grounds.  According to Plaintiff, the ALJ erred:

(1) in determining that "Mr. Perez's credibility was not supported by substantial evidence";

(2) in determining that working as a dishwasher was Plaintiff's past relevant work;

(3) in failing to consider limitations within the Residual Functional Capacity Assessment; and

(4) in failing to discuss whether Plaintiff could perform sustained work activities.

Each argument is evaluated below.

Plaintiff initially argues that the ALJ's determination of Mr. Perez's credibility is not supported by substantial evidence. More specifically, the ALJ found:

> The claimant's contention, to the extent that they purport an inability to perform any manner of work activity, are not found to be credible or consistent with the medical evidence. Moreover, there are no radiographic or clinical findings which would come close to support the degree of inability alleged.

As part of this argument, the Plaintiff relies on the report of Dr. Friedman because Dr. Friedman observed that Mr. Perez did not move about normally. Dr. Friedman noted that Mr. Perez walked with a limp. However, Dr. Friedman is a psychologist, and has limited knowledge about Plaintiff's physical agility. As such, reliance on Dr. Friedman's observation of a limp are of little weight, especially where he was consulting on Mr. Perez's mental status. In reviewing the record as a whole, it supports the ALJ's finding that Plaintiff's credibility is not supported by substantial evidence. For example:

\*   In October, 2005, the record of Columbus Hospital stated that Plaintiff was "ambulating and had full gait."

\*   The January 2006 record of St. Michael's Hospital indicated that Plaintiff's gait was "steady and full".

\*   In February, 2006, Dr. Mohil found Plaintiff had no acute distress, ambulated slowly with minimal difficulty, but had some limitations in the lower spine.

\*   The August, 2006, the record of St. Michael's Hospital indicated that Plaintiff's gait was steady and had full range.

\*   The RFC assessment found Plaintiff could lift 10-20 pounds and that he could stand or walk during the work day.

Credibility of the Plaintiff is assessed pursuant to an administrative ruling. *See* Social Security Ruling 96-7(p). When evaluating the credibility of an individual's statements, the ALJ must

consider the entire case record and give specific reasons for the weight given to the individual's statements.  Here, the ALJ clearly found that Plaintiff's complaints about pain were inconsistent with Plaintiff's gait that was "steady and full."  In addition, Plaintiff's testimony about his inability to arise from bed is incongruous to the finding of doctors that he could get on and off a examining table without a problem.  The ALJ had the ability to assess the Plaintiff's demeanor first hand at the hearing against the other evidence, and his conclusion is reasonable and supported by substantial evidence.  *See Hartranft v. Apfel*, 181 F. 3d 358, 362 (3d Cir. 1999).

Plaintiff's second argument is that the ALJ erred in finding that Mr. Perez could return to his past relevant work as a dishwasher for an airline food company. The ALJ determined:

> The claimant testified that he worked in 2003-04 for Fleet Food. He worked in Newark, but not at the airport. It was a full time job for just under two years.  The job lasted about a year and six or seven months and was full time.  He washed dishes for the company.  These were plates served to the company employees and passengers.  He only took dishes out of the washing machine and packed them in an empty container.  He moved dishes from the washing machine to the container all day. These were glass crystal plates.  He stood to do the job. He lifted no weight, just 3-4 plates at one time. He only lifted a couple of pounds at a time. The dishes came out in a conveyer.

This finding appears to be consistent with the record.  Plaintiff testified that three years prior to his hearing, he worked as a dishwasher where he loaded and unloaded dishes. (R. 244, 246, 247). He stood while doing this job and he was only required to lift three or four plates at a time. (R. 247-48). Generally, light work requires the ability to lift and/or carry up to twenty pounds; stand and/or walk for up to six hours per day, and sit, intermittently, for the remaining two hours. (SSR 83-10).  Here, Plaintiff's description of his past work as a dishwasher fits within the requirements of light work. *See* 20 C.F.R. § 416.967(b).  Indeed, the manner in which Plaintiff performed his past work as a

11

dishwasher requires less exertion than the actual requirements of light work.

Plaintiff argues that the past relevant work as a dishwasher must be discounted because Plaintiff's earnings records "show zero earnings" for the job in question. Although this may be true, the ALJ questioned Plaintiff at the hearing about his employment, and Plaintiff clearly answered that he was employed by Fleet Foods as a dishwasher. The testimony was:

> Q. Your earnings record shows very low earnings in some years no earnings. Did you ever have a long job?
>
> A. For about two years I was working
>
> Q. In the United States?
>
> A. Yes.
>
> Q. At one job?
>
> A. Yes at one job.
>
> Q. What years were they and what company was that?
>
> A. If I'm not mistaken, it was in 2003, 2004 from company at the airport called Fleet Food at Newark.
>
> ALJ: The name again, Angelica?
>
> INT: Fleet Food.
>
> ALJ: Fleet Food or Fruit?
>
> ATTY: Food, Fleet Food.
>
> By Administrative Law Judge:
>
> Q. Did you work off the books or on the books?
>
> A. Recording.
>
> Q. That was Newark Airport?

12

A.  That company provides service to the airport.

Q.  And where were you working? What city?

A.  In Newark, in Newark.

Q.  But not at the airport.

A.  No.

Q.  You worked in a factory?

A.  Uh-huh.

Q.  You got to say yes or no. You got to speak in words.

A.  Yes.

Q.  Your earnings record does not show any significant job for that time period. As a matter of fact, it shows zero in 2003.

A.  And that's why I'm telling you I'm not that sure about the dates. I don't know if it's 2003 or 2004 and 2005.

Q.  Right. But my point is that there is no such job shows up on your, on your earnings record the way you're describing it so.

A.  I have, I was there and I have proof of that at my house.

Q.  Okay. So it was a full-time job for two or three years.

A.  Yes, it was full time from one year to the next, but when I was going to reach my two years, I did not get to it.

Q.  So a little less than two years?

A.  It was about a year and seven, six or seven months.

Q.  And it was full time, right?

A.  Uh-huh.

Q.  You got to say words.

>A. Yes
>
>Q. What was your particular job? What was your function?
>
>A. Previously I was doing delivery for a company.
>
>Q. What did you do for Fleet Food during the year and seven months you mentioned?
>
>A. Dishwashing?
>
>Q. Washing what?
>
>INT: Dish.
>
>CLMT: (In English) Food, yeah.

Plaintiff's counsel argues that the dishwasher job should not be considered past relevant work because Plaintiff's testimony is inconsistent with the lack of earning records, and as a result, is "hardly evidence." However, the testimony is clear, and the ALJ could rely upon it.

Plaintiff's third argument is that the ALJ failed to "discuss the individual's ability to perform sustained work activities in an ordinary work setting," and therefore the case should be remanded for more findings. The ALJ found that "in comparing the claimant's residual functional capacity with the physical and mental demands of this work (dishwashing), I find that the claimant is able to perform it as actually performed." The ALJ found Plaintiff had residual functional capacity of lifting objects up to 20 pounds and he could stand, walk and sit for six hours per day. In comparing that finding with Plaintiff's job as a the dishwasher, plaintiff has the functional ability to perform that job. Plaintiff described the job of lifting up to four plates and walking and sitting. It appears to be an appropriate job for Plaintiff for a sustained period.

Finally, Plaintiff's argument with regard to the ALJ's failure to consider the RFC assessment of postural limitations which prohibited climbing ladders, ropes and scaffolds, or climbing ramps is of little relevance. The evidence is clear that the dishwasher job did not involve any of the stated postural limitations. Plaintiff never indicated there was any climbing ladders or ramps involved. It makes little sense to remand this case when the substantial evidence supports the ALJ's decision. See *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. §405(g).

Conclusion

For the reasons stated above, this Court finds that the Commissioner's decision is based on substantial evidence;

THEREFORE, IT IS on this 7th day of November, 2009

ORDERED, that the Commissioner of Social Security's decision is affirmed and the Complaint is dismissed.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

November 7, 2009